IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                )
AL PARVON,                      )
                                )
                 Plaintiff,     )
                                )
v.                              ) Civ. No. 15-00110 ACK-BMK
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
                 Defendant.     )
_____)

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION AND REMANDING CASE

For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Adjudication, ECF No. 21, and thereby AFFIRMS in part and REVERSES in part the Commissioner of Social Security's ("Commissioner") decision denying Social Security disability benefits to Plaintiff Al Parvon ("Parvon" or "Plaintiff"), Administrative Record ("AR") 15-24. The Court hereby REMANDS this case to the Administrative Law Judge ("ALJ") for further administrative proceedings consistent with this Order.

## BACKGROUND

On June 19, 2012, Plaintiff protectively filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. AR 15, 61, 130-32. That same day, he also protectively filed an

- 1 -

application for supplemental security income pursuant to Title
XVI of the Social Security Act.  AR 15, 60, 133-38.  In his
applications Plaintiff alleged he was disabled as of June 1,
2011.  AR 15, 130-38.  He was 56 years old at the onset of his
alleged disability.  AR 151; Pl.'s Br. in Supp. of Mot. for
Summ. Adjudication ("Pl.'s Br.") at 1.

Plaintiff's claims were initially denied on September
19, 2012.  AR 15, 60-61, 71-82.  He thereafter requested a
hearing before an ALJ, which took place on October 9, 2013 in
Buffalo, New York.  AR 15, 29-59, 83-84.  At the hearing,
Plaintiff requested a closed period of disability from June 1,
2011 to January 14, 2013, to which the ALJ limited his review.
AR 15, 36.

In a written opinion dated December 10, 2013, the ALJ
concluded that Plaintiff had not been under a disability within
the meaning of the Social Security Act from June 1, 2011 through
the date of the decision.  AR 15.  His decision was based on a
determination that Plaintiff was capable of performing his past
relevant work as a mobile home sales representative, computer
sales representative, or office machines sales representative.
AR 23.  The ALJ therefore denied Plaintiff's applications for
disability insurance benefits and supplemental security income.
AR 24.

On January 24, 2014, Plaintiff filed with the Social Security Administration's ("SSA") Appeals Council a request for review of the ALJ's decision.  AR 10-11.  He submitted to the Appeals Council a decision by the Department of Veteran's Affairs ("VA"), dated September 4, 2013, finding Plaintiff disabled as of April 10, 2012.  AR 199-205.  On February 11, 2015, the Appeals Council denied Plaintiff's request for review, finding that the ALJ's determination was not contrary to the weight of the evidence of record.  AR 1-7.  Additionally, the Appeals Council characterized the VA decision as "new information . . . about a later time," stating that the decision was dated September 12, 2014, after the ALJ had rendered a decision on December 10, 2013.[1]  AR 2.  The Appeals Council also noted that the VA "has a different evaluation process and utilizes different standards to determine disability."  AR 2.  Thus, the ALJ's decision became the Commissioner's final decision.  AR 1.

On March 31, 2015, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  Compl. – Social Security Appeal at 1.  Plaintiff

---

[1] As Plaintiff accurately points out, the Appeals Council incorrectly stated that the VA decision was dated September 12, 2014.  Pl.'s Br. at 6 n.3.  The record indicates that the VA decision was actually dated September 4, 2013, prior to when the ALJ issued his decision.  AR 199.

then filed a Motion for Summary Adjudication on January 13, 2016.  ECF No. 21-22.  In his accompanying brief, Plaintiff alleges that the SSA committed legal error when 1) the ALJ submitted his own lay judgment for that of the medical experts on record; 2) the ALJ failed to accord appropriate deference to the opinion of Plaintiff's treating psychiatrist; 3) the ALJ's residual functional capacity finding and vocational expert ("VE") hypothetical failed to include the appropriate mental limitations; and 4) the Appeals Council failed to consider and address the VA's September 2013 disability finding.  Pl.'s Br. at 7-8.

Defendant Commissioner of Social Security Carolyn W. Colvin ("Defendant") filed an Answering Brief on February 13, 2016.  Def.'s Answering Br. ("Def.'s Br."), ECF No. 25.  On February 22, 2016, Plaintiff filed a Reply in support of his Motion.  Pl.'s Reply Br. in Further Supp. of His Mot. for Summ. Adjudication ("Pl.'s Reply"), ECF No. 26.

The Court held a hearing on March 7 regarding the instant Motion, in which counsel for both parties appeared telephonically.

**STANDARD**

I.   **Jurisdiction and Standard of Review**

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security.[2]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the reviewing district court if it is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (reviewing a district court's decision de novo).  In determining the existence of substantial evidence, the whole administrative record must be considered, weighing the evidence that both supports and detracts from the Commissioner's conclusion.  See Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).

"Substantial evidence means more than a scintilla but less than a preponderance." Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted).  It is also "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  Finally, "[w]here the evidence may reasonably support more than one interpretation, [the court]

---

[2] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

may not substitute [its] judgment for that of the Commissioner."
Verduzco, 188 F.3d at 1089.

## II.   Summary Adjudication

The standard for summary adjudication is the same as
the standard for summary judgment.   Rexel, Inc. v. Rexel Int'l
Trading Corp., 540 F. Supp. 2d 1154, 1160 (C.D. Cal. 2008); see
also Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001)
(stating that the court's review of a motion for summary
adjudication is governed by Federal Rule of Civil Procedure
56(c)).   Summary judgment, or summary adjudication, is proper
where there is no genuine issue of material fact and the moving
party is entitled to judgment as a matter of law.   Fed. R. Civ.
P. 56(a).   Rule 56(a) mandates summary judgment "against a party
who fails to make a showing sufficient to establish the
existence of an element essential to the party's case, and on
which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also
Broussard v. Univ. of Cal. at Berkeley, 192 F.3d 1252, 1258 (9th
Cir. 1999).

"A party seeking summary judgment bears the initial
burden of informing the court of the basis for its motion and of
identifying those portions of the pleadings and discovery
responses that demonstrate the absence of a genuine issue of
material fact."   Soremekun v. Thrifty Payless, Inc., 509 F.3d

- 6 -

978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see
also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079
(9th Cir. 2004).  "When the moving party has carried its burden
under Rule 56[(a)] its opponent must do more than simply show
that there is some metaphysical doubt as to the material facts
[and] come forward with specific facts showing that there is a
genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith
Radio, 475 U.S. 574, 586-87 (1986) (citation and internal
quotation marks omitted); see also Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot
"rest upon the mere allegations or denials of his pleading" in
opposing summary judgment).

     "An issue is 'genuine' only if there is a sufficient
evidentiary basis on which a reasonable fact finder could find
for the nonmoving party, and a dispute is 'material' only if it
could affect the outcome of the suit under the governing law."
In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing
Anderson, 477 U.S. at 248).  When considering the evidence on a
motion for summary judgment, the court must draw all reasonable
inferences on behalf of the nonmoving party.  Matsushita Elec.
Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille
Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating
that "the evidence of [the nonmovant] is to be believed, and all
justifiable inferences are to be drawn in his favor").

**DISCUSSION**

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). A claimant must satisfy both requirements in order to qualify as "disabled" under the Social Security Act. Tackett, 180 F.3d at 1098.

## I. The SSA's Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled. Ukolov, 420 F.3d at 1003; see 20 C.F.R. § 404.1520. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Ukolov, 420 F.3d at 1003 (citations omitted in original). The claimant bears the burden of proof as to

steps one through four, whereas the burden shifts to the SSA for step five.  Tackett, 180 F.3d at 1098.

At step one the ALJ will consider a claimant's work activity, if any.  20 C.F.R. § 404.1520(a)(4)(i).  If the ALJ finds the claimant is engaged in substantial gainful activity he will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience.  20 C.F.R. § 404.1520(b).  Substantial gainful activity is work that is defined as both substantial – i.e. work activity involving significant physical or mental activities – and gainful – i.e. work activity done for pay or profit.  20 C.F.R. § 404.1572.  If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  Tackett, 180 F.3d at 1098.

Step two requires the ALJ to consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  Only if the claimant has an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities" will the analysis proceed to step three.  20 C.F.R. § 404.1520(c).  If not, the ALJ will find the claimant is not disabled and the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).

The severity of the claimant's impairments is also considered at step three.  20 C.F.R. § 404.1520(a)(4)(iii).

- 9 -

Here, the ALJ will determine whether claimant's impairments meet or medically equal the criteria of an impairment specifically described in the regulations.  Id.; see also 20 C.F.R. Part 404, Subpart P, App. 1.  If the impairments do meet or equal these criteria, the claimant is deemed disabled and the analysis ends. 20 C.F.R. § 404.1520(a)(4)(iii).  If not, the analysis proceeds to step four.  20 C.F.R. § 404.1520(e).

Step four first requires the ALJ to determine the claimant's residual functional capacity.  Id.  Residual functional capacity is defined as the most the claimant can still do in a work setting despite his physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's residual functional capacity, the ALJ will consider all of the relevant evidence in the claimant's case record regarding both severe and non-severe impairments.  20 C.F.R. § 404.1545.  This assessment is then used to determine whether the claimant can still perform his past relevant work.  20 C.F.R. § 404.1520(e).  Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1). The ALJ will find that the claimant is not disabled if he can still perform his past relevant work, at which point the analysis will end.  Otherwise, the ALJ moves on to step five.

In the fifth and final step, the ALJ will once again consider the claimant's residual functional capacity, as well as his age, education, and work experience, in order to determine whether the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(v).  Here, the Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do."  20 C.F.R. § 404.1560(c)(2).  If the claimant is unable to perform other work, he is deemed disabled; if he can make an adjustment to other available work, he is considered not disabled.  20 C.F.R. § 404.1520(g)(1).

## II.  ALJ's Analysis

### a. Steps One and Two

The ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from June 1, 2011 through January 14, 2013.  AR 17.  He next found that Plaintiff's alcohol abuse/dependence, depression, and hernia constituted severe impairments because they "significantly limit the [Plaintiff's] ability to perform basic work activities."  AR 17-18.  The ALJ also found that Plaintiff's non-severe impairments included low back pain, sleep apnea, hypertension, a transient ischemic attack in 2010, right ear hearing loss, obesity, and a renal cyst.  AR 18.  Neither party contests these findings.

**b. Steps Three and Four**

Moving to step three, the ALJ next found that
Plaintiff did not have an impairment or a combination of
impairments that met or medically equaled the severity of an
impairment listed in the Social Security regulations.  AR 18-19.
In so concluding, the ALJ found Plaintiff did not have
impairments resulting in two or more of the following "paragraph
B" criteria:  "marked restriction of activities of daily living;
marked difficulties in maintaining social functioning; marked
difficulties in maintaining concentration, persistence, or pace;
or repeated episodes of decompensation, each of extended
duration."  AR 18; see also 20 C.F.R. Part 404, Subpart P,
Appendix 1 § 12.02(B).  The ALJ defined a "marked" limitation as
"more than moderate but less than extreme," and "repeated
episodes of decompensation, each of extended duration" as three
episodes within one year, each lasting at least two weeks.  AR
18; see also 20 C.F.R. Part 404, Subpart P, Appendix 1
§ 12.00(C).

Measuring Plaintiff's impairments against the
"paragraph C" criteria in the regulations, the ALJ also found
"no evidence of repeated episodes of decompensation of extended
duration, a residual disease process that has resulted in such
marginal adjustment that even a minimal increase in mental
demands or change in the environment would be predicted to cause

- 12 -

the individual to decompensate, or current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." AR 19; see also 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02(C).

The ALJ then proceeded to assess Plaintiff's residual functional capacity for purposes of step four. AR 19-23. He found that Plaintiff was capable of performing light work with some limitations, and that Plaintiff had "occasional limitations in the ability to understand, remember and carry out detailed instructions (defined as mild limitations) and occasional limitations in the ability to make decisions." AR 19.

Plaintiff does not dispute the ALJ's findings regarding his physical limitations, but argues that in assessing Plaintiff's mental limitations, the ALJ improperly substituted his own lay judgment for that of the medical experts; failed to accord appropriate deference to Plaintiff's treating psychiatrist; and failed to accommodate in his residual functional capacity assessment and VE hypothetical the severe mental limitation he found at step two. Pl.'s Br. at 7-8.

In assessing whether or not a claimant is disabled, the ALJ must "develop the record and interpret the medical evidence," considering the "combined effect" of all of claimant's impairments, regardless of whether any one

- 13 -

impairment, considered alone, would be of sufficient severity. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). However, the ALJ is not obligated to "discuss every piece of evidence." Id. Furthermore, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

### i. Treating Psychiatrist Dr. Syed Ahmed

Plaintiff argues that the ALJ failed to accord appropriate deference to the expert medical report of treating psychiatrist Dr. Syed Ahmed, who assessed Plaintiff with "marked limitations in social functioning and marked limitations in concentration, persistence, or pace due to his Major Depressive Disorder and related symptoms." Pl.'s Br. at 9; AR 768. Dr. Ahmed also reported "[t]hree episodes of decompensation within 12 months, each at least two weeks long." AR 769.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Ukolov, 430 F.3d at 1004 (quotation marks omitted). Moreover, the ALJ may disregard a treating physician's opinion, regardless of whether or not that opinion is contradicted. Batson v. Comm'r of Soc.

- 14 -

Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's decision to afford treating physicians' opinions only minimal evidentiary weight where those opinions were in the form of checklists, were not supported by objective medical evidence, were contradicted by other statements and assessments of the claimant's medical condition, and were based on the claimant's subjective descriptions of pain).

However, "[a]n ALJ may reject the uncontradicted medical opinion of a treating physician only for 'clear and convincing' reasons supported by substantial evidence in the record." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (stating the same in its step four analysis). Nevertheless, "[i]f the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference . . . ." Holohan, 246 F.3d at 1202 (internal quotation marks and brackets omitted). An ALJ may only reject a contradicted treating physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence." Ghanim, 763 F.3d at 1161.

In assessing Plaintiff's residual functional capacity, the ALJ referenced several of Dr. Ahmed's treatment reports. Specifically, he noted a June 20, 2012 report in which Dr. Ahmed

assessed Plaintiff with "major depressive disorder, recurrent episode, moderate degree." AR 21, 246. The ALJ also cited to an August 27, 2012 follow-up appointment, where Plaintiff reported to Dr. Ahmed that he was consuming four to five drinks twice a week. AR 21, 748.

The ALJ then addressed Dr. Ahmed's Mental Impairment Questionnaire dated October 7, 2013; this is the medical opinion Plaintiff contends was entitled to greater deference. AR 22, 766-69. The ALJ noted that Dr. Ahmed's clinical findings in this report included "depressed mood, restricted affect, lack of motivation, difficulty falling and staying asleep, poor concentration and attention span and problems with recent memory." AR 22. The ALJ also noted Dr. Ahmed's further findings that Plaintiff had "marked limitations with social functioning and marked limitations with concentration, persistence and pace,"[3] as well as Dr. Ahmed's statement that Plaintiff had experienced three episodes of decompensation within twelve months, each lasting at least two weeks long. AR 23. Finally, the ALJ referenced Dr. Ahmed's statement that

---

[3] The Medical Impairment Questionnaire defines "marked" limitations as those limitations that are "more than moderate but less than extreme." AR 768. "[T]he degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis." AR 768.

Plaintiff's impairments or treatment would cause Plaintiff to be absent from work about four days per month.   AR 23.

After considering Dr. Ahmed's reports, the ALJ indicated that he gave "little weight" to Dr. Ahmed's opinion, as "there is no evidence in the record to support the mental limitations noted in the exhibit."  AR 23.  Further, the ALJ concluded that Dr. Ahmed's claim that Plaintiff would miss work four times per month was "too speculative to be adopted."  AR 23.

> **1. Mental Restrictions Including Marked Limitations in Concentration, Persistence, or Pace and in Social Functioning**

The Ninth Circuit has held that "a conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."  Ghanim, 763 F.3d at 1161; see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings.").  As Defendant points out, and as the record indicates, "Dr. Ahmed consistently observed that Plaintiff had normal thought processes, thought content, judgment, and impulse control and no evidence of harmful ideation and perceptual abnormalities during

treatment visits." Def.'s Br. at 8. Indeed, Dr. Ahmed's June 25, 2012 treatment notes state that Plaintiff denied feelings of hopelessness or worthlessness; suicidal or homicidal ideations, thoughts, or plans; or any auditory or visual hallucinations or paranoid ideation. AR 268. The report also indicates Plaintiff was "[a]lert and oriented to all spheres," and that there were "[n]o lethality issues or perceptual abnormalities noted." AR 268.

Dr. Ahmed's reports from March and April 2012 reflect similar observations. AR 271, 274-76. Additionally, the March 2012 report further states, "Thought process goal directed. Thought content significant for being overwhelmed with ongoing issues with his personal life." AR 276. The April 2012 report remarks that Plaintiff's "lack of motivation is less now." AR 271. In sum, a review of the administrative record indicates that Dr. Ahmed's finding of "marked" limitations in concentration, persistence, or pace was not consistent with his treatment notes.

Next, despite his finding of "marked" limitations in social functioning, Dr. Ahmed's treatment notes do not address such limitations in any depth. Rather, the treatment notes make only quick reference to Plaintiff's separation from his wife of thirty years, limited contact with his brother, and concern for his daughter and son, who had "bipolar disorder" and "pill

- 18 -

problems," respectively.  AR 275-76.  The treatment notes also indicate that Plaintiff's difficulty in quitting smoking or drinking was due in part to the fact that "he is hanging around with the people who smoke and drink and that is another reason for him not to stop."  AR 268.  Here again, the finding in Dr. Ahmed's medical opinion is not wholly in accord with his treatment notes.

The Court notes that Dr. Ahmed's treatment notes are not completely devoid of observations that support his finding that Plaintiff had limitations in social functioning and in concentration, persistence, or pace.  In his initial March 2012 report, for example, Dr. Ahmed writes that Plaintiff's "concentration or attention span is not good," and that, while his long-term memory was intact, Plaintiff had problems with short-term memory.  AR 275.  Pointing to these types of supporting statements, Plaintiffs argue that the treatment records were in fact consistent with Dr. Ahmed's medical opinion.  Pl.'s Br. at 14.  However, as stated above, "[w]here the evidence may reasonably support more than one interpretation, [the Court] may not substitute [its] judgment for that of the Commissioner."  Verduzco, 188 F.3d at 1089.  Because Dr. Ahmed's treatment notes can reasonably be read not to support the more serious findings indicated in his opinion, the Court will not disturb the ALJ's finding on this basis.

- 19 -

Additionally, Plaintiff argues that the Global Assessment of Function ("GAF") scores he received from several physicians undermine the ALJ's rejection of the physicians' medical opinions.  Pl.'s Br. at 10.  As Plaintiff points out, Dr. Ahmed assigned to him a GAF score of 50, which indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders IV 31-34 (4th ed. 2000).

Plaintiff cites to an administrative message issued by the SSA, which states the SSA's position that GAF scores should be treated as opinion evidence.  SSA Administrative Message 13066 ("AM-13066") (effective July 22, 2013).  However, the administrative message also explains, "As with other opinion evidence, the extent to which an adjudicator can rely on the GAF rating as a measure of impairment severity and mental functioning depends on whether the GAF rating is consistent with other evidence, how familiar the rater is with the claimant, and the rater's expertise."  Id.

Notably, the Ninth Circuit has held that an ALJ is not required to address GAF scores, "because a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need

for treatment, but it does not have any direct correlative work-related or functional limitations." Hughes v. Colvin, 599 F. App'x 765, 766 (9th Cir. 2015); Doney v. Astrue, 485 F. App'x 163, 165 (9th Cir. 2012); Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  Additionally, in its Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, the SSA states that it does not endorse use of the GAF scale in the Social Security or Supplemental Security Income disability programs, and that the scale "does not have a direct correlation to the severity requirements in [the SSA's] mental disorders listings."  65 Fed. Reg. 50746, 50764 (Aug. 21, 2000).

Nevertheless, taking the GAF scores into account, it is clear that, Dr. Ahmed's treatment notes directly contradict the GAF score of 50 he assigned Plaintiff, for the same reasons as explained above.  GAF scores assigned by other physicians in the record likewise fail to comport with their respective treatment notes.  Indeed, in recognition of the difficulty in using GAF scores to evaluate disability, the SSA administrative message also notes, "The problem with using the GAF to evaluate disability is that there is no way to standardize measurement and evaluation . . . . Research has also identified the propensity of some clinicians to give inflated or unrealistically low GAF ratings because the GAF rating instructions . . . are unclear . . . . [R]ating problems . . .

- 21 -

can lead to improper assessment of impairment severity."
AM-13066.

For his part, the ALJ made reference to Plaintiff's
GAF scores, but clearly did not find them supportive of Dr.
Ahmed's or the other physicians' opinions.  See Treichler v.
Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014)
("[W]e leave it to the ALJ to determine credibility, resolve
conflicts in the testimony, and resolve ambiguities in the
record.").  The disparity between the GAF scores and treatment
notes indicates that the ALJ did not commit legal error in
failing to give these scores greater weight.

## 2. Episodes of Decompensation

The Court next turns to Dr. Ahmed's statement in his
Mental Impairment Questionnaire that Plaintiff had experienced
three episodes of decompensation within twelve months, each
lasting more than two weeks.  AR 769.  The Social Security
regulations define episodes of decompensation as "exacerbations
or temporary increases in symptoms or signs accompanied by a
loss of adaptive functioning, as manifested by difficulties in
performing activities of daily living, maintaining social
relationships, or maintaining concentration, persistence, or
pace."  20 C.F.R. Part 404, Subpart P, App. 1 § 12.00(C)(4).
The regulations further state that "[e]pisodes of decompensation
may be inferred from medical records showing significant

alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)." Id.

Dr. Ahmed indicated in his treatment notes that he prescribed Plaintiff psychotropic medication, which he increased from 10 milligrams to 20 milligrams (after a two-week trial period), and later to 40 milligrams. AR 269, 271, 276. He also prescribed Plaintiff Trazodone for insomnia, and later switched Plaintiff to Ambien due to side effects Plaintiff experienced with the Trazodone. AR 269, 271, 276. Nothing in Dr. Ahmed's treatment notes indicates that he felt he was making "significant alterations in medication" in response to "exacerbations or temporary increases" in Plaintiff's symptoms when he increased Plaintiff's psychotropic medication dosage and switched the prescription used to treat Plaintiff's insomnia. Additionally, Dr. Ahmed nowhere documented any need for a more structured psychological support system, and there is no evidence anywhere in the record of a psychiatric hospitalization during the relevant time period.[4]

---

[4] The evidence appears to be inconsistent regarding Plaintiff's past psychiatric hospitalizations. While a Psychiatric Evaluation by Dr. Susan Santarpia and a Psychiatric Review Technique by Dr. Juan Echevarria both indicate Plaintiff's denial of any previous psychiatric hospitalizations or treatment, a Disability Benefits Questionnaire by Dr. Hillary

For the foregoing reasons, the Court finds that the ALJ's determination that there was "no evidence in the record to support the mental limitations noted in the exhibit" finds substantial support in the record.  Specifically, Dr. Ahmed's treatment notes detailing Plaintiff's goal-oriented thought processes, alertness, orientation, and lack of perceptual abnormalities, among other factors, contradict Dr. Ahmed's finding that Plaintiff suffered "marked" limitations with concentration, persistence, or pace.  Additionally, aside from the contradictory GAF score of 50, which the ALJ was not required to credit and which Dr. Ahmed did not expound upon in his treatment notes, there is no evidence to suggest Plaintiff suffered "marked limitations in maintaining social functioning." Finally, Dr. Ahmed's treatment notes are devoid of any evidence indicating Plaintiff experienced three episodes of decompensation.

### 3. Work Limitations

Finally, the ALJ found that Dr. Ahmed's contention that Plaintiff's symptoms or treatment would cause him to miss about four days of work per month was "speculative."  AR 23.  As

Tzetzo indicates that Plaintiff was hospitalized in a psychiatric unit after a "pill ingestion."  AR 554, 576, 654. However, because this apparent hospitalization occurred sometime prior to June of 1984, it is irrelevant to a determination of whether Plaintiff experienced any episode of decompensation during the twelve-month period Dr. Ahmed addressed in his report.

none of Dr. Ahmed's treatment reports speak to how much work Plaintiff would likely or did in fact miss due to his impairments or treatment, the Court finds that the ALJ's finding is supported by substantial evidence in the record.

### 4. Consistency with the Remainder of the Evidence

Significantly, Dr. Ahmed's findings are also contrary to the other evidence of record.  For example, Dr. Santarpia's Psychiatric Evaluation dated September 4, 2012 indicates Plaintiff's "demeanor and responsiveness to questions was cooperative"; "[h]is manner of relating and overall presentation was adequate"; his attention, concentration, and recent and remote memory skills were intact; and his cognitive functioning was average.  AR 555-56.

Plaintiff notes that the remainder of the objective medical evidence instead supports Dr. Ahmed's findings.  Pl.'s Br. at 10.  For example, a February 15, 2012 VA summary indicates Plaintiff felt "down, depressed, or hopeless [n]early every day."  AR 309.  A February 29, 2012 summary assessed his mood as "a 2 out of 10, with 10 being elated," and noted that he felt "depressed and apathetic."  AR 293-94.  Notably, that same summary also stated that "[t]hought processes are clear and goal-directed" and "[j]udgment and insight are intact."  AR 293.

Again, to the extent the record is inconsistent, it is the province of the ALJ, not the Court, to resolve ambiguities. Treichler, 775 F.3d at 1098 ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency . . . . Consequently, we leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (internal quotation marks and citation omitted).

Moreover, it is worth noting that the ALJ did not deny Plaintiff's symptoms in their entirety.  The ALJ recognized that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the objective medical evidence does not support the alleged *severity* of symptoms."  AR 23 (emphasis added).  Thus, the portions in the record that speak to Plaintiff's impairments and associated symptoms are entirely consistent with the ALJ's finding that Plaintiff had "occasional limitations in the ability to understand, remember and carry out detailed instructions (defined as mild limitations) and occasional limitations in the ability to make decisions."  AR 19; Cf. Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, *4 (1996) (noting the distinction

between "an individual's limitations and restrictions from a mental impairment(s)" and a residual functional capacity determination, which "requires a more detailed assessment").

For the foregoing reasons, the Court finds that the ALJ did not commit legal error by assigning "little weight" to Dr. Ahmed's opinion, nor did the ALJ improperly substitute his own judgment for that of Dr. Ahmed.  The ALJ gave specific and legitimate reasons for discrediting Dr. Ahmed's contested report, namely, that the report was contrary to the evidence of record and that his claim that Plaintiff would miss work four times per month was speculative.  Substantial evidence in the record supports these findings, and the Court therefore DENIES Plaintiff's Motion for Summary Adjudication on this issue and AFFIRMS this portion of the ALJ's decision.

### ii. Examining Physician Dr. Hillary Tzetzo

Dr. Hillary Tzetzo, a staff psychiatrist with the VA and examining physician of Plaintiff, completed a Disability Benefits Questionnaire regarding Plaintiff on August 19, 2013.  AR 651-664.  "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester v. Chater, 69 F.3d 1453, 1463 (9th Cir. 1995) (superseded by statute on other grounds).  Similarly, a contradicted opinion by an examining doctor may only be rejected

for specific and legitimate reasons that are supported by substantial evidence in the record.  Id. at 1463-64.

### 1. Whether Dr. Tzetzo's Report Constitutes a Medical Opinion

As an initial matter, Defendant argues that Dr. Tzetzo's questionnaire does not constitute opinion evidence under the agency's regulations.  Def.'s Br. at 14.  Therefore, Defendant argues, the ALJ did not commit reversible error in failing to evaluate the evidence contained in the questionnaire because an ALJ is not required to discuss every piece of evidence in the record.  Id. at 15 (citing Howard, 341 F.3d at 1012).  Implicit in Defendant's argument is that, had Dr. Tzetzo's questionnaire constituted a medical opinion, the ALJ would have had to provide either "clear and convincing" or "specific and legitimate" reasons for rejecting the questionnaire, due to Dr. Tzetzo's being an examining physician.

In support of this contention that Dr. Tzetzo's questionnaire is not a medical opinion, Defendant cites to 20 C.F.R. § 404.1527(a)(2) and § 416.927(a)(2), which state, "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions."  (Emphasis added.)

Defendant focuses on the latter part of the regulations' language, arguing that Dr. Tzetzo's "vague" statement provides no discussion of Plaintiff's specific functional limitations and "[does] not specify what, if any, limitations Plaintiff had in his ability to perform basic mental work activities."  Def.'s Br. at 14.  Nevertheless, Defendant does concede that the statement referenced Plaintiff's psychiatric symptoms.  Id.

However, Defendant provides no case law in support of the contention that medical opinions must contain a description of "what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Nor has the Court been able to locate any supporting case law.  Indeed, the Court notes that the regulations simply state that medical opinions may include statements regarding a claimant's limitations or restrictions.

Dr. Tzetzo's statement, which was based on an in-person examination, included judgments about the nature and severity of Plaintiff's impairments, AR 652, 655 ("Occupational and social impairment with deficiencies in most areas . . . . 85% of vet's occupational and social impairments appear to be related to MDD [Major Depressive Disorder] . . . .");

Plaintiff's symptoms, AR 657 (listing, *inter alia*, depressed mood, mild memory loss, flattened affect, and disturbances of motivation and mood); Plaintiff's diagnosis and prognosis, AR 654, 656 (listing major depressive disorder and cognitive disorder); and Plaintiff's mental restrictions, AR 657 (listing "[d]ifficulty in establishing and maintaining effective work and social relationships" and "[d]ifficulty in adapting to stressful circumstances, including work or a worklike [sic] setting").

The Court thus finds that Dr. Tzetzo's statement constitutes a medical opinion by an examining physician.

### 2. Whether the ALJ Improperly Rejected Dr. Tzetzo's Medical Opinion

The Court next considers whether the ALJ committed legal error in failing to substantively discuss Dr. Tzetzo's statement.  In his decision, the ALJ made only one mention of Dr. Tzetzo's opinion, stating, "On August 19, 2013, VA staff psychiatrist[] Dr. H. Tzetzo stated that 85% of the claimant's overall current mental health symptoms appear to be due to major depressive disorder, while 15% appear to be due to TBI [traumatic brain injury] residuals . . . ."  AR 22.  Thus, the ALJ did not explicitly reject or discredit Dr. Tzetzo's statement; rather, he simply ignored the majority of the medical opinion.  In doing so, the ALJ committed legal error.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where

- 30 -

an ALJ does not explicitly reject a medical opinion . . . he errs . . . . In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it . . . ."); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("Because a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them.").

The Court next considers whether the ALJ's error was harmless.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (stating that a court "may not reverse an ALJ's decision on account of an error that is harmless").  "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  Id. (quotation marks, citation, and brackets omitted).

As Plaintiff asserts, "Dr. Tzetzo opined that Mr. Parvon experienced social and occupational impairment with deficiencies in a number of functional areas, including work, school, family relations, judgment, mood, and thinking."  Pl.'s Br. at 11; AR 655.  The report also indicates such symptoms as "[d]ifficulty in establishing and maintaining effective work and social relationships" and "[d]ifficulty in adapting to stressful circumstances, including work or a worklike [sic] setting."  AR

657.  It further notes "mild impairment of memory, attention, concentration, or executive functions resulting in mild functional impairment" and "[s]ocial interaction is routinely appropriate."  AR 662.

Defendant argues that the ALJ did not commit reversible error because Dr. Tzetzo's findings are in line with the residual functional capacity assessment.  Def.'s Br. at 15-16.  The Court agrees with Defendant to the extent Dr. Tzetzo's report indicated "mild" impairment in memory, attention, concentration, and executive functions.  This comports with the ALJ's finding of "occasional limitations in the ability to understand, remember and carry out detailed instructions (defined as mild limitations) and occasional limitations in the ability to make decisions."  AR 19.

However, while Dr. Tzetzo found Plaintiff acted "appropriately" in social situations, he did note Plaintiff's "[d]ifficulty in establishing and maintaining effective work and social relationships."  AR 657.  This was not a factor the ALJ included in his residual functional capacity assessment, as each physician who commented on it rendered an opinion that the ALJ ultimately discredited.  As Plaintiff points out, "This issue is significant because the ALJ found that Mr. Parvon could perform his skilled past relevant work as a sales representative in three different sales fields, all of which require significant

- 32 -

social skill . . . .   Indeed, all of the Sales Representative positions involve the following:  people skills; the ability to influence people in their opinions, attitudes, and judgments; [and] speaking extemporaneously on a variety of subjects . . . ."  Pl.'s Br. at 11.

Plaintiff does not cite to any authority for this description of the various sales positions, except to reference the Department of Labor codes corresponding to each of his past relevant work positions.  See Dictionary of Occupational Titles (Dep't. of Labor, 4th ed. 1991) ## 273.357-034 (salesperson, trailers and motor homes), 275.257-010 (sales representative, computers and EDP systems), 275.357-034 (sales representative, office machines).  None of the Department of Labor definitions address the interpersonal requirements of the positions.

However, when presented with a hypothetical person who, among other limitations not included in the residual functional capacity assessment, had "occasional limitations in the ability to interact with the general public," the VE stated he did not believe such a person could perform any of Plaintiff's past relevant work.[5]  AR 57-58.  This hypothetical

---

[5] This was the second hypothetical the ALJ posed to the VE.  In the first, the ALJ presented a hypothetical person possessing the residual functional capacity the ALJ ultimately assessed to Plaintiff.  AR 56-57.  When asked whether that hypothetical person could perform Plaintiff's past relevant work, the VE responded that the individual could.  AR 57.  The ALJ's second

also assumed that the person would have "[o]ccasional limitations in the ability to respond appropriately to changes in a work setting," a limitation that Dr. Tzetzo noted in his report but that the ALJ likewise left out of his residual functional capacity assessment.  AR 57, 657 (noting "[d]ifficulty in adapting to stressful circumstances, including work or a worklike [sic] setting").

Because Dr. Tzetzo's medical opinion contained findings that could potentially alter the ALJ's step four determination, the Court finds that the ALJ's implicit rejection of the opinion was not harmless.

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see also Sullivan v. Hudson, 490 U.S. 877, 885 (1989) ("[T]he district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed.").  However, where the record is fully developed and "further administrative proceedings would serve no useful purpose," a court should remand for an immediate award of benefits.  Benecke, 379 F.3d at

---

hypothetical assumed all of the non-exertional limitations of the first hypothetical, and added several other limitations that the ALJ did not include in his ultimate residual functional capacity assessment of Plaintiff.  AR 57.

593. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id.

Here, the record is not sufficiently developed to allow this Court to make a determination whether Plaintiff is disabled within the meaning of the Social Security Act. The VE indicated that a hypothetical person with "occasional limitations" in his abilities to "interact with the general public" and "respond appropriately to changes in a work setting" would not be able to perform Plaintiff's past relevant work. AR 57-58. However, this hypothetical also presumed that the person would have "occasional limitations in the ability to perform certain activities within a schedule." AR 57. This limitation was not specifically discussed in Dr. Tzetzo's opinion, nor was it discussed in the ALJ's residual functional capacity assessment, meaning that the ALJ did not attribute it to Plaintiff. It is therefore unclear whether the social and adaptive limitations Dr. Tzetzo observed would change the step four analysis, or whether the additional limitation not

attributable to Plaintiff was determinative of the VE's
assessment that the person the ALJ described in his hypothetical
would be incapable of performing Plaintiff's past work.[6]

Furthermore, resolution of this issue leads to another
potential issue in the case that Plaintiff's social and adaptive
limitations are found to preclude him from performing his past
relevant work:  whether Plaintiff could perform other available

---

[6] When asked to assess whether this hypothetical person could
adjust to any other work (the step five inquiry), the VE stated
his belief that the person could not.  AR 58.  When asked why,
the VE explained, "Specifically the occasional limitations in
completing a normal work week and in maintaining schedules, I
feel would preclude the individual from sustaining work."  AR
58.  Again, difficulty in maintaining schedules was the
limitation not attributed to Plaintiff by either the ALJ or Dr.
Tzetzo.

Importantly, however, this statement does not suggest that
these two limitations were also determinative of the VE's
finding that the hypothetical person could not engage in his
past relevant work.  Step four asks the ALJ to consider whether
the claimant can perform his past relevant work; if not, step
five asks the ALJ to consider whether the claimant can make an
adjustment to other work.  Thus, while the social and adaptive
limitations identified by Dr. Tzetzo may not have necessarily
precluded the hypothetical person from adjusting to other work
(step five), these limitations could still have been a factor in
that person's inability to perform his past relevant work (step
four).  In other words, based on the VE's statement, the social
and adaptive limitations assessed at step four might be obviated
if the hypothetical person transitioned to other work that did
not require him to work closely with others or in a setting
subject to frequent change.  The person's difficulty in
completing a normal work week or maintaining a schedule, on the
other hand, could not be accommodated by adjusting to other
work.

work, as examined in step five.[7]  The Court is not equipped to make such a determination in light of the available evidence,[8] and indeed, it is incumbent on the SSA to present during step five "evidence that demonstrates that other work exists in significant numbers in the national economy that [Plaintiff] can do," given his residual functional capacity and vocational factors.  20 C.F.R. § 404.1560(c)(2).[9]

---

[7] A third potential issue that arises is whether Dr. Tzetzo's report is sufficiently probative, given that it was rendered on August 19, 2013 – outside Plaintiff's closed period of disability.  AR 651.  But see Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) ("We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability . . . . It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.").

[8] As noted in footnote 6, the VE found that the hypothetical person's "occasional limitations in completing a normal work week and in maintaining schedules" would prevent him from engaging in other work.  AR 58.  However, the VE did not specifically remark on whether a person possessing limitations consistent with those in Dr. Tzetzo's disregarded report would be capable of adjusting to other work.  Nor did the SSA present evidence regarding the specific work to which Plaintiff could adjust, or whether such work exists in significant numbers in the national economy.  Finally, because the ALJ found Plaintiff capable of performing his past relevant work, he stopped short of analyzing whether Plaintiff could transition to other work.

[9] The Court notes that the ALJ's disregard of Dr. Tzetzo's report was not harmful to the ALJ's step three analysis.  Dr. Tzetzo's opinion does not satisfy two out of the four "paragraph B" criteria because it does not indicate marked restrictions in activities of daily living or repeated episodes of decompensation.  Additionally, Dr. Tzetzo reported "mild impairment of memory, attention, concentration, or executive functions resulting in mild functional impairment," which

For all the foregoing reasons, the Court finds that the ALJ committed reversible error in failing to adequately address Dr. Tzetzo's medical opinion.  The Court therefore GRANTS summary adjudication to Plaintiff on this issue and REMANDS this case for further administrative proceedings in order to determine the effect of Dr. Tzetzo's opinion on Plaintiff's disability assessment.

### iii. Examining Physician Dr. Susan Santarpia

The ALJ also gave "little weight" to the opinion of examining physician Dr. Susan Santarpia because "her medical source statement conflicts with her prognosis."  AR 22. Plaintiff does not appear to genuinely contest this finding, conceding in a footnote that Dr. Santarpia found only mild impairments and limited socialization, and noting that the ALJ attributed "little weight" to the opinion, as he had with others.  Pl.'s Br. at 10.

Indeed, Dr. Santarpia found Plaintiff was "able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks,

---

indicates Plaintiff did not suffer "marked difficulties in maintaining concentration, persistence, or pace."  AR 662; see also 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02(B). Similarly, there is no evidence in the report that Plaintiff satisfies any of the "paragraph C" criteria.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02(C).

relate adequately with others, and appropriately deal with stress within normal limits." AR 556-57. Dr. Santarpia found "limited socialization with friends and family," but indicated no social limitations. AR 556. Further, she found "mild impairment is demonstrated in performing complex tasks independently and making appropriate decisions," and noted difficulties caused by chronic alcohol consumption. AR 557.

The ALJ determined that these findings were inconsistent with her prognosis, which simply stated, "Guarded given chronic alcohol consumption." AR 557. However, whether or not this constituted a true inconsistency is irrelevant, since Dr. Santarpia's findings were consistent with the ALJ's findings in his step three analysis and in his residual functional capacity assessment. AR 19-23. Thus, any error the ALJ committed was harmless.

The Court therefore finds that the ALJ did not commit reversible error by assigning "little weight" to Dr. Santarpia's opinion.

### iv. Non-examining Physician Dr. Juan Echevarria

Finally, non-examining physician Dr. Juan Echevarria performed a Psychiatric Review Technique of Plaintiff on September 17, 2012. AR 564-76. As a general proposition, "the opinion of a treating physician must be given more weight than

the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim, 763 F.3d at 1160.

Dr. Echevarria found mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. AR 574. He also found that Plaintiff's insight and judgment were poor. AR 576. However, because Dr. Echevarria classified Plaintiff with non-severe mental retardation, for which there was no evidence in the record, the ALJ gave "little weight" to his opinion. AR 22.

Because the ALJ correctly observed that there is no evidence of mental retardation in the record, the Court finds that his decision to reject Dr. Echevarria's opinion was supported by sufficient evidence. See Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

The Court therefore concludes that the ALJ did not commit legal error in according "little weight" to Dr. Echevarria's non-examining medical opinion, and therefore DENIES summary adjudication to Plaintiff on this issue and AFFIRMS the ALJ on the same.

### v. Residual Functional Capacity Assessment
### and Vocational Expert Hypothetical

Plaintiff also argues that the ALJ "failed to accommodate the severe mental limitation he assessed at Step 2 in his RFC finding, and otherwise made contradictory findings as to Mr. Parvon's mental functional abilities."  Pl.'s Br. at 14. Specifically, Plaintiff contends that because the ALJ assessed Plaintiff's depression as "severe" at step two, his residual functional capacity finding and VE hypothetical should have included correspondingly severe mental limitations.  Id. at 15.

Additionally, Plaintiff asserts that since the ALJ found mild restrictions in activities of daily living during step three, his residual functional capacity finding and VE hypothetical should likewise have included these limitations. Id. at 16 (citing SSR 96-8P, 1996 WL 374184 at *4 for the proposition that the residual functional capacity assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 [Mental Disorders] of the Listing of Impairments [in the Social Security regulations]"); AR 18.

The step four residual functional capacity assessment is a separate inquiry from steps two and three, where the ALJ considers medical evidence to determine the nature and severity

of the claimant's impairments, as well as whether those impairments medically equal the requirements of an impairment listed in the Social Security regulations.  See, e.g., 20 C.F.R. §§ 404.1527(d)(2), 404.1520.  In contrast, the final responsibility for deciding residual functional capacity and the application of vocational factors is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2); Vertigan, 260 F.3d 1044 at 1049.

Further, as Defendant points out, the Ninth Circuit has found that the ALJ is under no obligation to include in the residual functional capacity assessment limitations he finds at steps two and three.  See, e.g., Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228-29 (9th Cir. 2009) (finding that ALJ properly accounted for claimant's disorder in the residual functional capacity assessment and VE hypothetical, despite the fact that neither of these fully captured the severe impairment determined at step two); Israel v. Astrue, 494 F. App'x 794, 796 (9th Cir. 2012) (rejecting claimant's contention that the ALJ erred by not adequately including his step three findings in the residual functional capacity finding and VE hypothetical and stating, "The limitations identified in step 3 . . . are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . . The ALJ must consider the step-3 limitations along with all of the relevant evidence in

the case record . . . when forming the RFC.") (emphasis in original) (internal quotation marks and citations omitted).

Here, despite according the medical opinions "little weight," the ALJ reviewed all of the relevant evidence in the case record and made an assessment that was consistent with the restrictions identified in the objective medical evidence. See Israel, 494 F. App'x at 796 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Per the agency's regulations and Ninth Circuit case law, the ALJ was not required to conform his residual functional capacity assessment and VE hypothetical with the limitations identified in the earlier steps.

The Court therefore finds that the ALJ did not commit legal error in declining to include in his residual functional capacity assessment and VE hypothetical certain restrictions from steps two and three, and thus DENIES summary adjudication to Plaintiff on this issue and AFFIRMS the ALJ on the same.

### III.  Appeals Council Decision

Finally, Plaintiff argues that the Appeals Council violated an absolute duty to consider and address the September 2013 VA decision, which evaluated Plaintiff as 70% disabled as of April 10, 2012 due to his major depressive disorder.  Pl.'s Br. at 17-18; Pl.'s Reply at 5-6; AR 199-205.  For some unknown

reason Plaintiff had failed to introduce this VA decision in his hearing before the ALJ.

In declining to evaluate the VA decision, the Appeals Council stated that the "Department of Veterans Affairs has a different evaluation process and utilizes different standards to determine disability."  AR 2.  Additionally, as noted above, the Appeals Council incorrectly stated that the VA decision was dated September 12, 2014.  Pl.'s Br. at 6 n.3; AR 2.  It then characterized the decision as "new information . . . about a later time."  AR 2.  However, the record indicates that the VA decision was actually dated September 4, 2013, prior to when the ALJ issued his decision on December 10, 2013.  AR 199.

Plaintiff contends that while the VA decision is not binding on the SSA, the Appeals Council was required to consider the decision, as it constituted a finding by another governmental agency.  Pl.'s Br. at 17; SSR 06-03p, 2006 WL 2329939, *6 (2006) ("[A] determination made by another agency . . . that you are disabled . . . is not binding on us . . . . [E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.").

Further, Plaintiff argues that the Appeals Council is also required to review new evidence that a claimant submits. 20 C.F.R. § 404.970(b) ("If new and material evidence is

submitted, the Appeals Council shall consider the additional
evidence only where it relates to the period on or before the
date of the administrative law judge hearing decision."); Brewes
v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir.
2012) ("The Commissioner's regulations permit claimants to
submit new and material evidence to the Appeals Council and
require the Council to consider that evidence in determining
whether to review the ALJ's decision, so long as the evidence
relates to the period on or before the ALJ's decision."); Taylor
v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir.
2011).

        In response, Defendant argues that this Court does not
have jurisdiction to review the Appeals Council's denial of
Plaintiff's request for review, since such actions are not
subject to judicial review.  Def.'s Br. at 25-26.  As the Ninth
Circuit has stated, a denial of a claimant's request for review
by the Appeals Council is a "non-final agency action not subject
to judicial review because the ALJ's decision becomes the final
decision of the Commissioner."  Taylor, 659 F.3d at 1231 (citing
Klemm v. Astrue, 543 F.3d 1139, 1144 (9th Cir. 2008) for the
proposition that the Social Security Act grants district courts
jurisdiction to review only "final decisions of the
Commissioner").  Therefore, a district court may neither affirm

nor reverse an Appeals Council decision denying a request for review.  Id.

Nevertheless, while a court cannot reverse such an Appeals Council decision, it *can* review new evidence submitted to the Appeals Council.  See Taylor, 659 F.3d at 1231-33 (reviewing expert medical opinions submitted to and rejected by the Appeals Council and remanding case to the ALJ upon finding that the Appeals Council was required to consider the additional evidence); Mengistu v. Colvin, 537 F. App'x 724, 725 (9th Cir. 2013) (stating that the court "may consider additional evidence presented for the first time to the Appeals Council when reviewing the agency's disability determination," and remanding case to the ALJ because "there [was] a reasonable possibility the report would have changed the [ALJ's] decision"); see also Wilder v. Comm'r of Soc. Sec. Admin., 545 F. App'x 638, 639-40 (9th Cir. 2013) (noting that new evidence upon which the Appeals Council failed to remark in denying review "nevertheless became part of the administrative record on appeal," but denying remand because the new evidence was contradictory and based on an unreliable source).

Because the VA decision was dated September 4, 2013 and found Plaintiff to be disabled as of April 10, 2012, it clearly relates to the time period before the date of the ALJ's hearing decision.  AR 24, 199.  It therefore satisfies the

requirements of 20 C.F.R. § 404.970 and the Appeals Council was obligated to consider it.  See Taylor, 659 F.3d at 1233 (finding that a medical opinion concerning claimant's mental health related to the period before claimant's disability insurance coverage expired or the ALJ rendered his decision, and therefore should have been considered by the Appeals Council).  Further, contrary to Defendant's contention, Plaintiff was not required to show "good cause" before submitting this new evidence to the Appeals Council.  Brewes, 682 F.3d at 1162.

Because the VA decision found Plaintiff 70% disabled due to his major depressive disorder, it goes to the heart of his claims for disability insurance and supplemental security income.  The VA decision based its conclusion on such factors as Plaintiff's "[d]ifficulty adapting to stressful circumstances"; "[o]ccupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood"; and "[d]ifficulty in establishing and maintaining effective work and social relationships."  AR 201.  Thus, the decision is consistent with findings noted elsewhere in the administrative record and bears on the question whether Plaintiff was disabled during the relevant period for purposes of obtaining benefits.  Remand is therefore appropriate in this situation.

The Court recognizes that a decision rendered by another governmental agency is not binding on the SSA, and that it is therefore unclear how the ALJ would have treated the decision had he reviewed it in the first instance, especially in light of the new evidence in Dr. Tzetzo's report the ALJ must now consider on remand.  It is for this additional reason that the Court finds it most appropriate for the ALJ to consider the VA decision on remand as well.  Indeed, "[w]here the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." Taylor, 659 F.3d at 1233.

The Court therefore GRANTS summary adjudication to Plaintiff on this issue, and REMANDS the matter to the ALJ to reconsider Plaintiff's disability status in light of the VA decision.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Adjudication, and thereby AFFIRMS in part and REVERSES in part the Commissioner's decision denying Social Security disability benefits to Plaintiff.  Specifically, the Court finds that 1) the ALJ's decision to disregard the medical opinions of Dr. Ahmed, Dr. Santarpia, and Dr. Echevarria did not constitute

legal error; 2) the ALJ's decision to implicitly disregard the medical opinion of Dr. Tzetzo constituted reversible legal error; 3) the ALJ did not commit legal error in conducting his residual functional capacity assessment or crafting his VE hypothetical, neither of which included certain limitations the ALJ identified in steps two and three of the sequential process for determining whether a claimant is disabled; and 4) the Appeals Council was required to consider the VA decision, which became part of the overall administrative record when Plaintiff submitted it as new evidence and the Appeals Council denied his request for review.

Accordingly, the Court hereby REMANDS this case to the ALJ for further administrative proceedings in order to determine, in conjunction with considering the entire record, the effect of Dr. Tzetzo's medical opinion and the VA decision on Plaintiff's disability assessment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, March 11, 2016.

Alan C. Kay
Sr. United States District Judge

Parvon v. Colvin, Civ. No. 15-00110 ACK-BMK, Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Adjudication and Remanding Case.